SUMNER GORDON & another[1] *vs*. SAFETY INSURANCE COMPANY.

Essex. March 10, 1994. - May 5, 1994.

Present: LIACOS, C.J., ABRAMS, O'CONNOR, & GREANEY, JJ.

*Insurance*, Coverage, Motor vehicle insurance, Uninsured motorist, Construction of policy. *Contract*, Insurance. *Words*, "Use," "Consent."

In an action seeking declaratory relief, the judge correctly interpreted language in a standard Massachusetts automobile insurance policy limiting to the amount required by statute ($25,000) the uninsured benefits payable to anyone "injured while using an automobile without the consent of the owner," to conclude that an insurer was not required to extend full uninsured bodily injury coverage to a passenger injured while riding in a vehicle taken by another person under apparently larcenous circumstances. [689-691]

CIVIL ACTION commenced in the Superior Court Department on March 13, 1992.

The case was heard by *Elizabeth B. Donovan*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jack L. Altshuler* for the plaintiffs.

*Alice Olsen Mann* for the defendant.

GREANEY, J. The plaintiffs, Sumner Gordon and Ross D. Gordon (Ross), filed a complaint in the Superior Court seeking a declaration under G. L. c. 231A (1992 ed.) that the Massachusetts automobile insurance policy issued by the defendant, Safety Insurance Company (Safety), provided uninsured motorist benefits in the amount of $100,000 to Ross who was injured while a passenger in a stolen automobile.

---

[1]Ross D. Gordon.

Safety filed a motion for summary judgment pursuant to Mass. R. Civ. P. 56 (b), 365 Mass. 824 (1974), seeking a declaration that its policy only required it to pay $25,000 in uninsured motorist benefits because Ross had been "using an auto without the consent of its owner." A judge in the Superior Court allowed Safety's motion, and judgment entered dismissing the complaint. We transferred the case to this court on our own motion. We conclude that Safety's policy requires it to pay $25,000 in uninsured motorist benefits. Since Safety is entitled to a declaration to that effect, we vacate the judgment of dismissal and order the entry of the appropriate declaratory judgment.

The facts are not in dispute. Safety issued a Massachusetts automobile insurance policy to Sumner Gordon for the year January 1, 1990, to January 1, 1991. Mr. Gordon's son, Ross, was listed as an operator on the coverage selection page of the policy, and, at the time of the accident, was a member of his father's household.

The policy provided $100,000 "per person" limits for bodily injury caused by an uninsured automobile. The policy provided it would pay that amount for bodily injury caused by an uninsured automobile to "[a]ny household member, while occupying . . . an auto not owned by [the named insured]." (The policy defined the term "occupying" as "mean[ing] in, upon, entering into, or getting out of.") The policy, however, contained a limitation which required Safety to pay only $25,000 in benefits to "[a]nyone injured while using an auto without the consent of the owner." The policy also contained a limitation on medical payments which denied medical benefits to "[a]nyone injured while occupying an auto without a reasonable belief that he or she had the consent of the owner to do so."

On October 20, 1990, Ross was a passenger in a stolen automobile operated by a friend, Derrick Capozzi. Ross stated that he did not know the automobile had been stolen because Capozzi had told him that the vehicle belonged to an uncle who had let Capozzi "borrow it." Ross asked Capozzi to drive him to a friend's home, and Ross got into the car for

that purpose. While a passenger in the automobile, Ross was injured when the automobile rolled over. Capozzi was ultimately prosecuted for larceny of a motor vehicle.

Ross and his father made a claim on Safety for the full amount of coverage of $100,000 per person for bodily injury caused by an uninsured automobile. Safety took the position that it was obligated to pay only $25,000 in bodily injury benefits since Ross had been a passenger in an automobile that, at the time of the accident, was being "us[ed] . . . without the consent of the owner," within the meaning of the limitation. This action by the plaintiffs requesting a declaratory judgment as to their rights under Safety's policy followed.

We are concerned with the proper interpretation of the language in a standard Massachusetts automobile insurance policy. This presents a question of law on the undisputed facts. See *Jet Line Servs., Inc.* v. *American Employers Ins. Co.*, 404 Mass. 706, 710 n.5 (1989); *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982). The words of Safety's policy must be construed according to "the fair meaning of the language used, as applied to the subject matter." *Manning* v. *Fireman's Fund Am. Ins. Cos.*, 397 Mass. 38, 40 (1986), quoting *Bilodeau* v. *Lumbermens Mut. Casualty Co.*, 392 Mass. 537, 541 (1984). "A policy of insurance whose provisions are plainly and definitely expressed in appropriate language must be enforced in accordance with its terms." *Hyfer* v. *Metropolitan Life Ins. Co.*, 318 Mass. 175, 179 (1945), quoting *Stankus* v. *New York Life Ins. Co.*, 312 Mass. 366, 369 (1942). When policy language identifying those to whom coverage is afforded constitutes part of the basic insurance agreement, a person claiming coverage, like Ross, must demonstrate that he is an insured. See *Markline Co.* v. *Travelers Ins. Co.*, 384 Mass. 139, 140-141 (1981); *Kelleher* v. *American Mut. Ins. Co.*, 32 Mass. App. Ct. 501, 503-504 (1992).

An automobile liability insurer is obviously concerned about disclaiming or limiting coverage for injuries sustained by persons in stolen motor vehicles or those used without the owner's authority. The insurer of the owner of the automo-

bile taken by Capozzi under apparently larcenous circumstances was not required to extend bodily injury coverage to someone in Ross's position. Safety, in its uninsured coverage, was required, at the time of the accident on October 20, 1990, to provide only a maximum of $25,000 in benefits.[2] Benefits above that amount were provided strictly at Safety's option, and, accordingly, are a matter of contract and not a statutory mandate.

The Safety policy is not ambiguous. As far as this case is concerned, the policy provides a maximum of $100,000 in benefits for an insured incurring bodily injury while "occupying" an automobile not owned by an insured which is uninsured (and the policy defines "occupying" as being "in" the automobile). The policy reduces that coverage to a maximum of $25,000 in benefits, if the insured is "using an [uninsured] auto without the consent of the owner." The word "use" is clearly broader than the word "occupy." The ordinary meaning of "use" includes "the legal enjoyment of property that consists of its employment, occupation, exercise or practice." Webster's New Third Int'l Dictionary 2523 (1961). See Black's Law Dictionary 1382 (6th ed. 1990) ("use" means "[t]hat enjoyment of property which consists in its employment, occupation, exercise or practice"). Ross, who had requested, and was receiving, a ride to a friend's home, was more than just "occupying" the automobile taken without authority by Capozzi; Ross was also "using" it for his own purposes, in the sense of the definitions set forth above. See *Orrill* v. *Garrett*, 100 Ill. App. 2d 194, 197 (1968) (term "use" in auto liability policy much broader than "operate" or "drive" and extends to passenger); *National Union Fire Ins. Co.* v. *Bruecks*, 179 Neb. 642, 648 (1966), quoting *Metcalf*

---

[2]Safety was required to provide uninsured motorist coverage in the amount of $10,000 per person and $20,000 per accident. See G. L. c. 175, § 113L (1), as amended through St. 1988, c. 273, § 46, and G. L. c. 90, § 34A, as amended through St. 1979, c. 611, § 2. Safety was also required to provide, at the option of the insured, additional motorist benefits of $15,000 per person and $40,000 per accident. See G. L. c. 175, § 113C, as amended through St. 1983, c. 241, § 12.

v. *Hartford Accident & Indem. Co.*, 176 Neb. 468, 473 (1964) ("automobile is being used by an individual who is traveling in it regardless of whether it is being operated by him or by another"); *State Farm Mut. Auto. Ins. Co.* v. *Francis*, 669 S.W.2d 424, 426-427 (Tex. Ct. App. 1984) (passenger of automobile was "user" within meaning of policy where his trailer was attached to the insured vehicle, and boat and motor therein fell out, striking claimant's vehicle); *Sears* v. *Grange Ins. Ass'n*, 111 Wash. 2d 636, 638-639 (1988) (an injured passenger "uses" a vehicle for purposes of underinsured motorist coverage).

The language of the limitation in the Safety policy makes no differentiation in the word "consent" between an injured person's subjective belief and an existing objective fact. The medical payments portion of the policy makes such a distinction in the provision which denies medical payments to "[a]nyone injured while occupying an auto without a reasonable belief that he or she had the consent of the owner to do so." This is an additional indication that the term "consent," in the limitation we are considering, is to be taken literally. A subjective belief by Ross that the automobile was being used by Capozzi with the owner's permission is of no relevance if in fact the automobile had been stolen.

The judgment is vacated. A new judgment is to be entered declaring that Safety is required to pay $25,000 under the uninsured provisions of the automobile insurance policy issued to Sumner Gordon for bodily injuries incurred by Ross D. Gordon in the accident of October 20, 1990.

*So ordered.*