Bohn, J.
BACKGROUND
In his complaint before this Court, plaintiff Daniel Turco (“Turco”) has alleged that defendant Aetna Casualty and Surety Company (“Aetna”) breached its contract with Turco by denying coverage under the underinsured motorist provision of an insurance policy (“policy”) issued by Aetna to plaintiff Concord River Realty, Inc.[2] Specifically, Turco alleges that he was entitled to coverage for injuries suffered on October 17, 1990, during the course of a police-initiated motor vehicle stop using the insured automobile.
In response, defendant Aetna has denied any breach of contract and has asserted a counterclaim for a declaratory judgment to the end that Turco was not entitled to coverage because he was neither the named insured, a household member, nor an occupant of the insured automobile at the time of the incident.
A joint motion to bifurcate the issues for trial was allowed by the Court (Cowin, J.), on March 31, 1995. Subsequently, the parties agreed to limit a trial in this case to issues of coverage under Counts I (breach of contract) and III (specific performance) of Plaintiffs Complaint; and, to Aetna’s declaratory judgment counterclaim.[3] Specifically, at trial the issue to be determined was whether Turco was “occupying” the insured auto under the terms of the policy.[4]
A trial without a jury was held before this court on June 13, 1996. For the reasons below, judgment is to be entered for the Defendant/Plaintiff-in-Counterclaim, Aetna Casualty and Surety Company, on Counts I and III of the Complaint. Furthermore, a declaration is to be entered on Aetna’s counterclaim, declaring that Plaintiff/Defendant-in-Counterclaim, Daniel J. Turco, was not occupying the insured automobile at the time of the incident and is, therefore, not entitled to coverage under the underinsured motorist provisions of the policy.
Based on the credible evidence and inferences reasonably to be drawn from that evidence, the court makes the following findings of fact[5] and rulings of law.
FINDINGS OF FACT
1. At the time of the incident in question, Turco was employed as an inspector for the Commonwealth of *149 Massachusetts Registry of Motor Vehicles. Upon the merger of the Commonwealth’s police forces in 1992, Turco became a member of the Massachusetts State Police.
2. In 1990, Turco’s duties included making motor vehicle stops for traffic law violations.
3. The Registry of Motor Vehicles did not provide Turco with a vehicle for that purpose.
4. Since 1985, including the time of the incident which is the subject of this case, Turco was the sole shareholder of Concord River Really, Inc.
5. During that same time, including the date of the incident, John Halnen was the sole officer and director of Concord River Realty, Inc.
6. Concord River Realty, Inc. is a Massachusetts corporation duly incorporated under the General Laws of the Commonwealth.
7. On March 31, 1987, Concord River Realty, Inc. obtained automobile insurance from Aetna for a 1978 Mercedes Benz 450 SL (“insured auto”).
8. The insurance policy declarations page listed Concord River Realty, Inc., as the named insured.
9. The policy defined “you” as “the person or organization shown as the named insured in ITEM ONE of the declarations.”
10. Turco was not the named insured in Item One of the Declarations.
11. The application showed John Halnen (“Halnen”) to be the applicant and sole driver of the insured auto.
12. The policy showed the principal garaging site as Halnen’s home in Plymouth, Massachusetts.
13. The policy defined “household member” as “anyone living in your household who is related to you by blood, marriage or adoption.”
14. Turco was not a household member of-the named insured.
15. The policy defined “occupying” as “in, upon, getting in, on, out or off.”
16. Turco used the insured auto on a dally basis.
17. On October 17, 1990, the date of the accident, Turco was performing driver and truck examinations in Lexington for the Massachusetts Registry of Motor Vehicles.
18. Turco left Lexington in the insured auto after completing his duties.
19. While driving north on Route 128, in the town of Woburn, Massachusetts, Turco observed a black Lincoln Continental sedan (“Lincoln”) driving in and out of traffic at a high rate of speed.
20. The Lincoln was operated by Paul Carpenter (“Carpenter”).
21. Turco drove the insured auto behind the Lincoln.
22. The insured auto had no outward markings or indications to show that it was a law enforcement vehicle.
23. Turco flashed his lights at Carpenter.
24. Carpenter drove the Lincoln onto Route 93 south, and proceeded for approximately 1 to 1 VS miles, at which point he pulled into the breakdown lane and stopped.
25. Turco drove the insured auto into the breakdown lane behind the Lincoln.
26. Turco stopped the insured auto ten (10) feet behind the Lincoln.
27. The insured auto’s engine was running, with the keys in the ignition.
28. Turco issued a citation to Carpenter, turned and began walking towards the insured auto.
29. The Lincoln pulled away.
30. The rear left tire of the Lincoln ran over Turco’s left foot, causing him to spin around, strike the rear quarter panel of the Lincoln, and fall to the ground with one leg in the breakdown lane.
31. Turco did not come into contact with the insured auto when he fell. At all times material to the resolution of this case, that vehicle was no closer than three (3) feet from the plaintiff.
RULINGS OF LAW
1. “When policy language identifying those to whom coverage is afforded constitutes part of the basic insurance agreement, a person claiming coverage . . . must demonstrate that he is an insured.” Gordon v. Safety Insurance Co., 417 Mass. 687, 689 (1994).
2. Where the words in an insurance policy are “plain and free from ambiguity, they must be construed in their usual and ordinary sense.” Jacobs v. United States Fidelity & Guaranty Co., 417 Mass. 75, 77 (1994).
3. Turco was not in or getting in, on, out or off of the insured auto at the time of the incident. Although he intended to return to the insured auto, he was not in the process of getting into the vehicle when he was injured. Turco’s intent to return to the auto is immaterial. Rosebrooks v. National General Insurance Co., 13 Mass.App.Ct. 1049, 1050, further app. rev’w. denied 386 Mass. 1104 (1982).
4. “In determining whether a claimant is ’’upon" an insured vehicle, courts have invariably required some physical contact with the vehicle, or at a minimum, the performance of an act directly related to the vehicle. . . . Such a requirement is consistent with the commonly understood definition of‘upon,’ that of‘on’." Kelleher v. American Mutual Ins. Co. of Boston, 32 Mass.App.Ct. 501, 505 (1992).
5. Turco was not in physical contact with the insured auto when he was injured. Therefore, he was not occupying the insured auto.
*150 6. Turco has not met his burden of establishing he is an insured under the underinsurance provisions of the policy, and is therefore not entitled to coverage under the underinsurance provisions of the policy.
ORDER
For the foregoing reasons, it is hereby ORDERED that judgment enter for the defendant Aetna Casualty and Surety Company on Counts I and III of the Complaint.
It is further ORDERED that a declaration enter for defendant Aetna Casualty and Surety Company on its Counterclaim, declaring that plaintiff Daniel J. Turco is not entitled to coverage under the underinsurance provisions of Concord River Realty, Inc.’s insurance policy.

 During the course of litigation, Turco also alleged that Aetna was estopped from denying coverage based on the representations of Turco’s agent, Domenic Bocchino. However, Turco did not amend his complaint to include this claim, and he failed to litigate the issue at trial. The claim is therefore deemed waived.

 Count II of Turco’s complaint, alleging violations of G.L.c. 93A and c. 176D, will, therefore, not be addressed in this ruling.

 The parties stipulated that Turco was neither the named insured or a household member of the named insured. See Jacobs v. United States Fidelity & Guaranty Co., 417 Mass. 75, 78 (1994); Andrade v. Aetna Life & Casualty Co., 35 Mass.App.Ct. 175, 178, further app. rev’w. denied, 416 Mass. 1105 (1993).

 The findings of fact are also culled from the agreed upon facts in the parties’ joint pretrial memorandum, filed with the court on January 12, 1995.