Zobel, J.
1. Facts
Upon Robert Heikkila’s leasing a motor vehicle from Auto Credit Rehab Corporation (“Auto Credit”), John Hancock Property and Casualty Insurance Companies (“Hancock”) issued an automobile policy covering the vehicle which named Auto Credit as an additional insured. Lexington Insurance Company (“Lexington”) *690 provided Auto Credit with excess coverage on the vehicle.
On June 23, 1993, all pertinent insurance policies being in full force, an intoxicated Heikkila gave Philip C. Maher (“Maher”) a ride home at Maher’s request. After dropping Maher off, Heikkila led Bridgewater Police Officer Daniel J. Thompson (“Thompson”) on a high speed chase, in the course of which Heikkila ran his vehicle against Thompson’s, causing Thompson serious injury.
Maher’s parents had purchased automobile liability insurance from Arbella Mutual Insurance Company (“Arbella”). Maher (as a member of his parents’ household) was a named assured, and thus the beneficiary of coverage in the amount of $25,000.
Thompson sued Heikkila, Auto Credit, and Maher; but before trial, Hancock, on behalf of Heikkila and Auto Credit, settled with Thompson for the $100,000 policy limits. The claim against Maher went forward, on the theory that Maher had negligently induced Heikkila to drive him home while knowing Heikkila to be intoxicated. During trial, the parties settled this action for $325,000, subject to certain conditions, as will shortly appear. The trial judge found explicitly that the settlement was “fair and reasonable,” and implicitly that it was concluded in good faith.
2. Does Arbella’s Homeowner’s Policy Cover Maher?
Maher’s parents had also purchased from Arbella a homeowner’s policy with limits of $300,000 which Thompson now argues covered Maher, as well. Arbella, however, contends that this policy excluded from personal liability coverage any bodily injuiy arising out of:
the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an insured.
In settling Thompson’s action against Maher, Arbella took a release from Thompson and paid him the $25,000 “automobile” policy limits unconditionally, leaving for resolution (in the instant litigation) whether the homeowner’s policy would cover the additional $300,000 of the settlement, i.e., whether that policy encompassed Thompson’s claim against Maher. This in turn requires deciding (in light of the exclusion) whether Thompson’s injuiy arose out of Maher’s “use” of a motor vehicle; and whether the motor vehicle in question was “owned or operated by or rented or loaned” to Maher. A “Yes” answer to both questions activates the exclusion and negates coverage.
Had the collision occurred while Heikkila was driving Maher home, Maher would certainly be considered a user, within the policy language. Gordon v. Safety Insurance Co., 417 Mass. 687, 690 (1994). The return trip was inextricably connected with the outward portion — as a matter of law, a reasonable person in Maher’s position must have realized that Heikkila would drive back to his home. This, however, does not necessarily mean that during Heikkila’s homeward drive Maher was a user of the Heikkila vehicle. One who, for example, takes a hotel shuttle bus to the airport does not “use” the bus after he has been dropped off, even though he understands that the operator will be driving back to the hotel immediately.
As to the second issue, Maher certainly was not the owner or operator of the vehicle at the time of the collision.
Beyond all this, the entire basis of the claim is that without Maher’s request Heikkila would not have been driving at all that night. The Second Amended Complaint specifically alleges that Maher “induced or solicited or otherwise caused [Heikkila] to operated [sic] motor vehicle while Maher knew, or should have known that Heikkila was intoxicated.” In short, Thompson asserts that absent Maher’s conduct, a drunken Heikkila would never have been on the road at any time, and more specifically, at the time of the collision.
This of course prescinds from the question of proximate cause, i.e., whether Maher’s negligence (if he was negligent) was a substantial factor in causing Thompson’s injury. One could argue that Heikkila’s deliberately ramming Thompson’s vehicle was something which Maher had no legal duty to foresee, Lawrence v. Kamco, Inc., 8 Mass.App.Ct. 854, 858 (1979); one could argue, conversely, that on the facts known to him, Maher should have realized the high probability that Heikkila’s state of intoxication heightened the likelihood that he would injure someone, see, Petition of Kinsman Transit Co., 338 F.2d 708, 723-24 (2d Cir. 1964). The answer, probably, is that the event (Heikkila’s intentionally colliding with another vehicle) is not “the same general sort [of incident] that was expectable,” id. at 726, nor “from the same forces, and to the same class of persons,” id. at 725, which Maher should reasonably have contemplated when he asked for the lift — and still less when he alighted safely at his home.
Proximate cause, however, is irrelevant here because the settlement agreement makes the only issue the effect of the coverage, i.e., the availability of policy proceeds to a successful claimant. As the parties have framed it, the question is not, “Would Maher prevail if the matter went to trial?” It is not even, “Is Maher entitled to summary judgment or a directed verdict?” The issue is simply, “Is Thompson’s claim subject to a policy exclusion?”
The exclusion applies to “use” of a motor vehicle “owned or operated by” Maher. It does not extend to conduct which merely relates to an automobile or in which an automobile played a part. Thus it does not apply here.
*691 3. Did Hancock Owe Maher a Defense?
As an entirely separate matter, Arbella seeks a declaration that Hancock (Heikkila’s insurer): (1) owed Maher a defense against Thompson; and (2) having failed to defend, now must reimburse Arbella for the costs and expenses Arbella incurred in defending Maher.
The Hancock policy provides:
We will pay only if you or someone else using your auto with your consent is legally responsible for the accident. . .
We also have a duty to defend any lawsuit, but our duty to defend ends when we offer, tender, or pay to any claimant the maximum limits coverage under this policy. We may end our duty to defend at any time during the course of the lawsuit, by offering, tendering, or paying the maximum limits of coverage under the policy, without the need for a judgment or settlement of the lawsuit or a release by the claimant.
Arbella argues that Maher was “using" Heikkila’s auto when he rode in it as a passenger and that this triggered Hancock’s duty to defend Maher in the underlying action.
If Maher was not “using” the Heikkila auto, then Hancock would not be liable to pay a judgment against Maher, nor to settle any claim against him. Nonetheless, the duty to defend Maher is broader than the duty to pay Swift v. Fitchburg Mutual Insurance Co., 45 Mass.App.Ct. 617, 623-24 (1998), collecting cases. The defense obligation depends upon the complaint’s containing allegations (1) which can themselves by reasonable interpretation be understood to state or suggest a claim within the policy terms, id. at 623, or (2) which can, if supplemented with facts known to, or reasonably ascertainable by, the insurer, establish the duty, id. at 623-24.
Here, the complaint asserted a claim against Maher resting on his use of an automobile. Although subsequent developments might establish that Maher was not “using” the vehicle, the language of the complaint was sufficient to require of Hancock that it furnish him with a defense.
Failure to do so invoked serious consequences. “An insurer who unjustifiably refuses or fails to defend its insured, even in good faith, assumes the consequential risks of that breach of its insurance contract, including liability for the expense of a reasonable settlement of the underlying claim as well as the cost of the defense to that time,” Jefferson Insurance Co. of New York v. National Union Fire Insurance Co. of Pittsburgh, Pa., 42 Mass.App.Ct. 94, 103 (1997).
Hancock, however, argues that by settling with Thompson for the $100,000 policy limits in settlement, it discharged all obligation to anyone else. Whatever might have been true before 1993, the amendment in the language approved for the standard automobile policy, resulting directly from the decision in Aetna Casualty and Surety Co. v. Sullivan, 33 Mass.App.Ct. 154 (1992), both absolves an insurer from failure to obtain a release and enables payment of the policy limits to discharge the insurer’s duty to defend, Premier Insurance Co. of Massachusetts v. Furtado, 428 Mass. 507, 511 (1998); see Thaler v. The American Insurance Co., 34 Mass.App.Ct. 639, 641n (1993), overruled on other grounds, Lazris v. Metropolitan Property & Casualty Insurance Co., 428 Mass. 502, 504 (1998).
That Hancock could without adverse consequence extract a release from Thompson as a prerequisite to payment, Lazris v. Metropolitan Property & Casualty Insurance Co., at 505, is immaterial here. Hancock did pay; its payment ended any obligation to defend or indemnify.
4. Should Either Hancock or Lexington Have Defended Auto Credit?
Auto Credit seeks a declaration that Hancock owed Auto Credit a defense in Thompson’s action and, alternatively, if Hancock did not, then the duty to defend devolved on Lexington, the contingent and excess insurer.
Hancock argues that its paying Thompson the policy limits discharged any obligation to defend Auto Credit. Hancock then agrees with Auto Credit that the departure of Hancock triggered Lexington’s duty to defend Auto Credit under the contingent and excess policy. The Lexington policy provides:
We will pay sums you must pay as damages because of bodily injury or property damage to which this insurance applies caused by an accident involving a leased auto, up to the limit of liability stated in the policy declarations for this coverage, but only when:
1) you have exercised due diligence; and
2) the underlying insurance covering you required by the leasing contract is not available to you; and
3) there is no other valid and collectible insurance policy available to you, whether primary, excess or contingent which:
a) is sufficient to cover your liability under the accident;
b) has liability coverage limits at least equal to those set forth in Item 3 of the policy declarations; and
4) all other valid and collectible insurance available to you, whether primary, excess or contingent has been exhausted by payment of judgments or settlements.
We will defend you in a lawsuit seeking damages for claimed bodily injury or property damage payable under this policy. We will provide this defense even if any of the things the suit claims to be true are groundless, false or fraudulent.
*692 As the earlier discussion indicated, Hancock’s payment of its policy limits terminated its obligations to its assureds — including, here, Auto Credit. Thus the Hancock coverage was no longer “available” to Auto Credit having “been exhausted by payment of . . . settlement. . .”
ORDER
Accordingly:

In Middlesex Civil Action No. 97-4286:

It is Ordered, that Plaintiffs Motion for Summary Judgment be, and the same hereby is, Allowed; and it is
Further Ordered, that Arabella Mutual Insurance Company’s Cross-Motion for Summary Judgment as to the Plaintiff Daniel J. Thompson be, and the same hereby is, Denied; and it is
Further Ordered, that John Hancock Property & Casually Insurance Company’s Motion to Intervene and motion for Summary Judgment be, and the same are Allowed; and it is
Further Ordered, that Arabella Mutual Insurance Company’s Cross-Motion for Summary Judgment as to John Hancock Property & Casualty Insurance Company be, and the same hereby is, Denied; and it is
Further Ordered, that the prevailing parties confer and, no later than March 1, 1999, jointly submit, in electronic form readable by WordPerfect 5.1, with hard copy, a single proposed Declaratory Judgment (directed to the undersigned personally, Courtroom 12-A, Middlesex County Courthouse, 40 Thorndike Street, Cambridge).

In Essex Civil Action No. 97-1104;

It is Ordered, that Plaintiffs Motion for Summary Judgment be, and the same hereby is, Denied as to Defendant John Hancock Property & Casualty Insurance Company, and Allowed as to Defendant Lexington Insurance Companies; and it is
Further Ordered, that Defendant John Hancock Property & Casualty Insurance Company’s Motion for Summary Judgment be, and the same hereby is, Allowed; and it is
Further Ordered, that Defendant Lexington Insurance Companies’ Motion for Summary Judgment be, and the same hereby is, Denied; and it is
Further Ordered, that the prevailing parties confer and, no later than March 1, 1999, jointly submit, in electronic form readable by WordPerfect 5.1, with hard copy, a single proposed Declaratory Judgment (directed to the undersigned personally, Courtroom 12-A, Middlesex County Courthouse, 40 Thorndike Street, Cambridge).