MICHAEL TIMPSON vs. TRANSAMERICA INSURANCE COMPANY.

No. 95-P-870.

Suffolk. June 6, 1996. - September 19, 1996.

Present: WARNER, C.J., ARMSTRONG, & KASS, JJ.

*Insurance,* Insurer's obligation to defend, Insured, Unfair act or practice, Settlement of claim. *Agency,* Scope of authority or employment. *Intentional Conduct. Consumer Protection Act,* Unfair or deceptive act.

In a claim brought against an insurer seeking damages for the insurer's failure to defend a third-party tort action brought against the claimant for sexual harassment, violation of civil rights, intentional infliction of emotional distress, and interference with advantageous relations, the judge correctly concluded that the insurer was not obligated to defend where the allegations in the underlying complaint, describing intentional conduct of the claimant that was outside the scope of his employment, were outside the coverage of the policy; summary judgment correctly entered for the insurer. [346-353]

Where an insurer rightfully declined to defend a claimant in a third-party tort action because the claimant's conduct was not covered by the insurance policy in question, summary judgment was correctly entered for the insurer on the claimant's claim that the failure to defend constituted an unfair settlement practice. [353]

CIVIL ACTION commenced in the Superior Court Department on October 26, 1993.

The case was heard by *John C. Cratsley,* J., on motions for summary judgment.

*David A. Murray* for the plaintiff.

*Carol A. Kelly* for the defendant. ·

WARNER, C.J. The plaintiff, Michael Timpson, brought this Superior Court action against the defendant, Transamerica Insurance Company (Transamerica). Timpson's complaint contained two counts. Count I alleged that because Transamerica wrongfully failed to defend him in an action brought by reporter Lisa Olson, Transamerica should reimburse him for legal fees and associated costs incurred by him in the

course of his defense against Olson's action. Count II alleged that Transamerica engaged in unfair claim settlement practices in violation of G. L. c. 93A and G. L. c. 176D, § 3. Timpson moved for summary judgment on both counts of his complaint. Transamerica filed a cross motion for summary judgment. After a hearing, the motion judge entered an order denying Timpson's motion for summary judgment and allowing Transamerica's cross motion. Timpson appeals from the ensuing judgments. We affirm.

From the materials before the motion judge, the following appears. In May 1990, Transamerica and the owners of the New England Patriots football team (Patriots) entered into an insurance contract (the policy) which was effective through May 9, 1991. As a football player for the Patriots, Timpson was an "additional insured" under the policy, which required Transamerica to provide for the payment of Timpson's legal expenses, including attorneys fees, in the event that Timpson was sued in connection with conduct or acts allegedly engaged in while acting "within the scope of his duties" as a Patriot's employee.

The allegations of Olson's complaint were to this effect. She was a sports reporter for the Boston Herald. On September 17, 1990, she conducted an interview in the Patriots' locker room with Patriots' player, Maurice Hurst. During the interview, another player, Zeke Mowatt, while naked, stood close to Olson, and proceeded to make crude remarks and gestures toward her. Timpson allegedly "laughed and shouted encouragement" to Mowatt. In addition, other players, naked, allegedly approached Olson, displayed their genitals to her, and made vulgar comments. James Oldham, a member of management personnel for the Patriots, was present during the incident and made no effort to stop the players' conduct.

Olson's complaint named as defendants the Patriots and several players, including Timpson. Olson's complaint charged Timpson and other Patriots' players with sexual harassment, violation of her civil rights, intentional infliction of emotional distress, and interference with advantageous relations.

After service of the summons and the complaint, Timpson demanded that Transamerica defend his claim. Transamerica refused and denied it had a duty to defend him because Timp-

son had acted "outside the scope of his duties as an employee of the New England Patriots."

Olson's lawsuit was settled prior to trial, without Timpson conceding to any liability. Still, Timpson incurred legal costs and attorney's fees totaling $87,705.76. Timpson's request for reimbursement was denied by Transamerica. Transamerica maintained that Timpson's alleged conduct was performed outside the scope of his duties as a Patriots' employee and thus was not covered under the policy.

Timpson argued below and on appeal that there was a *possibility* that the damages sought by him would be covered under the policy where he arguably (1) acted within the scope of employment, and (2) acted negligently. The Superior Court judge concluded, however, that the kinds of losses that might be proved that lay within the range of the allegations of the complaint did not fit the expectation of insurance reasonably generated by the terms of the policy. See *Sterilite Corp.* v. *Continental Cas. Co.,* 17 Mass. App. Ct. 316, 318-319 (1983). Therefore, the judge concluded that Transamerica appropriately did not defend Timpson.

In reviewing a grant for summary judgment, we determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." Mass.R.Civ.P. 56, 365 Mass. 824 (1974). *Judson* v. *Essex Agric. & Technical Inst.,* 418 Mass. 159, 162 (1994).

Here, where both parties moved for summary judgment, and the evidence taken in the light most favorable to Timpson entitled Transamerica to a judgment as a matter of law on both counts of Timpson's complaint, the judge properly granted Transamerica's summary judgment motion and denied Timpson's motion. See *Conley* v. *Massachusetts Bay Transp. Authy.,* 405 Mass. 168, 173-178 (1989).

1. *Transamerica's duty to defend.* Generally, a duty to defend does not exist until it is shown that the person claiming coverage was, in fact, an insured under the policy. Windt, Insurance Claims and Disputes § 4.01 (3d ed. 1995). In Massachusetts, an insurer is obligated to undertake the defense of a third-party complaint against an insured when the allegations "are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms." *Sterilite Corp.,* 17 Mass. App. Ct. at 318. The scope of an

insurer's duty to defend is "based not only on the facts alleged in the complaint but also on the facts that are known or readily knowable by the insurer." *Desrosiers* v. *Royal Ins. Co. of America*, 393 Mass. 37, 40 (1984). Specifically, "the process is one of envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the policy." *Sterilite Corp., supra* at 318. See also *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 13 (1989); *W.R. Grace & Co.* v. *Maryland Cas. Co.*, 33 Mass. App. Ct. 358, 364 (1992); *Doe* v. *Liberty Mutual Ins. Co.*, 423 Mass. 366, 368-369 (1996). However, when the allegations in the underlying complaint "lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate" or defend the claimant. *Terrio* v. *McDonough*, 16 Mass. App. Ct. 163, 168 (1983).

Timpson argues that, according to the language of Olson's complaint, he qualifies as an "additional insured" under the policy, and, therefore, Transamerica had a duty to defend him. More particularly, he argues under *Sterilite Corp.*, 17 Mass. App. Ct. 316; *Boston Symphony Orchestra, Inc.*, 406 Mass. 7; and *W.R. Grace Co.*, 33 Mass. App. Ct. 358, that for the duty to defend to arise (1) there need only be a *possibility* that the range of the complaint's allegations is broad enough to permit a claim under the policy, and (2) the merits of the claim can never be grounds for an insurer to refuse unilaterally to defend the insured.

Transamerica, on the other hand, contends that because Timpson was allegedly both (1) acting outside the scope of his employment duties, and (2) acting intentionally, Timpson did not qualify as an "additional insured," and thus Transamerica is relieved of any duty to defend Timpson under the policy. See *Terrio*, 16 Mass. App. Ct. at 168-169.

Applying the "duty to defend" analysis to this case, we conclude, as did the motion judge, that there was not enough in the Olson complaint to invoke the duty of Transamerica to defend under the policy provisions. See *Sterilite Corp.*, 17 Mass. App. Ct. at 319.

*a. Conduct within the scope of Timpson's employment duties.* The policy specifically requires that in order for Timpson to qualify as an "additional insured," the claim against him

must be founded on conduct while he was "acting within the scope of his duties" as an employee of the named insured, the Patriots. It is Timpson's burden to prove, as a person claiming coverage under the policy, that he is an insured as defined by the policy. *Gordon* v. *Safety Ins. Co.*, 417 Mass. 687, 689 (1994), and cases cited. Although Timpson asserts that the allegations within the Olson complaint are broad enough to include a claim that he was "acting within the scope of his duties," the complaint fails to meet the elements of the applicable test, as delineated in *Wang Labs. Inc.* v. *Business Incentives, Inc.*, 398 Mass. 854, 859 (1986).

Under *Wang*, the factors that determine whether an employee's tortious conduct was within the scope of his employment include whether (1) the conduct is of the kind he is employed to perform; (2) it occurs substantially within authorized time and space limits; and (3) it is motivated, at least in part, by a purpose to serve the employer. *Wang Labs., Inc., supra* at 859, and cases cited. If, however, an employee "acts from purely personal motives . . . in no way connected with the employer's interests," he is not acting within the scope of his employment. *Pinshaw* v. *Metropolitan Dist. Commn.*, 402 Mass. 687, 694-695 (1988), quoting from Prosser & Keeton, Torts § 506 (5th ed. 1984).

Timpson argues that he meets the requirements of the *Wang* test, and that he was not acting for purely personal motives. Specifically, he contends that because the alleged conduct occurred in the locker room, the employer's workplace, and because he was engaged in some Patriots' team business, changing his clothing after a game, he meets part (2) of the *Wang* test. In short, he claims that his alleged conduct occurred substantially within authorized time and space limits of his job.

Timpson also contends that he meets part (3) of the *Wang* test, because he was motivated in part by a purpose to serve his employer. Relying on *Manning* v. *Grimsley*, 643 F.2d 20 (1st Cir. 1981)(professional baseball pitcher who intentionally threw a baseball toward hecklers and injured a spectator was found to have acted within scope of employment because heckler was interfering with ability to perform, and thus, quieting the heckler would likely result in better performance by himself and team), Timpson argues that employees have been held to have been acting in the interests of their employ-

ers, and within the scope of their employment, even though the act might have first appeared to have harmed the employer's interests.

Timpson contends that he, like the baseball player in *Manning*, was acting to promote better performance for the team. He explains that by laughing and shouting encouraging words to his male teammates — all of whom were allegedly sexually harassing a female reporter — Timpson was promoting team unity, which in turn, would lead to better playing by his team. Furthermore, Timpson argues that if he acted to promote better team performance, he was not acting for purely personal motives, but rather for the good of his employer. See *Pinshaw*, 402 Mass. at 694-695.

In addition, Timpson claims that because he was changing and a press interview was occurring at the time of the alleged conduct, he was doing actions "of the kind he is employed to perform" and, therefore, fulfilled part (1) of the test.

Timpson's argument fails upon examination of the specific allegations within the Olson complaint. While Timpson may arguably have fulfilled element (2) of the *Wang* test (time and place element), he in no way satisfied elements (1) and (3).

As for part (1) of the *Wang* test, Olson's complaint alleges that Timpson had signed a contract with the New England Patriots requiring him to cooperate with members of the media as part of his employment. Olson's complaint also alleges that Timpson and other players interfered with her efforts to interview another player, and that she left the locker room "[d]istraught as a result of the humiliation and harrassment." Thus, where Timpson made a legally enforceable promise to cooperate with the media, and then did exactly the opposite, he could not meet part (1) of the *Wang* test — he was not participating in "conduct . . . of the kind he [was] employed to perform." Second, the conduct in which he allegedly did participate, sexual harassment, was not the kind of conduct that he ever would be legally employed to perform.

Further, as for part (3) of the *Wang* test, it is difficult to envisage how Timpson's alleged conduct of encouraging Mowatt's behavior could ever be perceived as serving his employer. It is axiomatic that an employee is *not* serving his employer if he is acting counter to the Patriots' interests in maintaining good relations with the news media and counter

to his employment contract. Such conduct is not performed in an effort to advance the Patriots' interests, but rather serves purely personal motives. See *Pinshaw*, 402 Mass. at 694-695.

By failing the *Wang* test, Olson's allegations as to Timpson's actions fall outside the scope of employment. On this basis, therefore, Transamerica properly refused to defend Timpson's claim.[1]

*b. Allegations of Timpson's conduct as "intentional, extreme and outrageous."* "An insurer has no obligation to defend when the allegations of a complaint describe with precision intentional conduct of a defendant which the insurance policy expressly excludes from coverage." *Terrio*, 16 Mass. App. Ct. at 168. Furthermore, as we have explained, where the allegations in the underlying complaint lie expressly outside the policy coverage and its purpose, the insurer is even "relieved of the duty to investigate." *Ibid*.

Here, the policy extends coverage to personal injury claims and obligates Transamerica to defend any suit against the insured seeking damages resulting from personal and bodily injuries to which the insurance applies. As in *Terrio, supra,* the policy explicitly excludes intentional conduct from coverage. Thus, for coverage to apply to Timpson, his alleged conduct must be unintentional.

Olson's complaint contains allegations that Timpson sexually harassed Olson and attempted to embarrass and intimidate her with the intention of preventing her from reporting sports news solely because of her sex. Specifically, she charged Timpson and his cohorts with (I) sexual harassment, (II) violation of her civil rights, (III) intentional infliction of emotional distress, and (IV) interference with advantageous relations. Timpson argues that two of the four counts may be read to allege negligence, not intentional torts, and, therefore, his claim should be covered by the policy. Transamerica, on the other hand, contends that all four counts allege intentional conduct.

Timpson concedes that counts III and IV allege intentional torts. However, he argues that counts I and II are "reasonably interpretable as including within their scope unintentional

---

[1]Timpson proffers other arguments in support of his theory that the allegations of the Olson complaint were broad enough to include a claim that Timpson was acting within the scope of his employment at the time of the alleged conduct. We find no merit to these arguments.

and/or negligent conduct," thereby creating the *possibility* that his claim falls under the policy. See *Boston Symphony Orchestra, Inc.*, 406 Mass. at 11-13 (even though complaint explicitly alleged *contract* damages, not covered by the policy, the court held the language of the complaint was interpretable as alleging *tortious* injury, which was covered under the policy). See also *Sterilite Corp.*, 17 Mass. App. Ct. at 318-319. Timpson looks directly to the language of paragraphs 18 and 22 of the complaint, pointing out that it does not ascribe any motivation or intent to Timpson.[2] Further, he emphasizes that it is not for the insurer to deny a defense on the basis of the merits. *Id.* Thus, he argues, if there is *any* chance the complaint alleges negligence, which would bring the claim under the policy, even if there is strong indication that Timpson would lose on the merits of such a claim, Transamerica owed him a duty to defend. See *Boston Symphony Orchestra, Inc.*, 406 Mass. at 10-13; and *Sterilite Corp.*, 17 Mass. App. Ct. 318-320.

Moreover, regarding count I, Timpson contends that the sexual harassment charge is not necessarily predicated on the commission of an intentional tort.[3] (In fact, he claims that he did not intend to harass Olson sexually.) For further support, he looks to the language of the three statutes addressing sexual harassment, G. L. cc. 151A, 151B, and 151C, and notes that they provide that sexual harassment may occur in the absence of an intent to injure.[4]

However, all four of the charges allege conduct intentional

---

[2]Paragraph 18 alleges that Timpson "laughed and shouted encouragement to defendant Mowatt and made remarks which included, 'Make her look,' 'That's what she wants' and 'Is she looking?' Paragraph 22 alleges that another defendant said that "Timpson was one of those shouting encouragement."

[3]Timpson does not argue extensively that count II, the civil rights violation, is founded upon negligence as opposed to intentional conduct. However, upon looking at the language within count II, it appears that Olson bases this violation on the sexual harassment charge preceding it — which is, in fact, based on intentional conduct. See paragraph 46 ("The defendants . . . interfered with and interrupted plaintiff's enjoyment of . . . her rights by threats, intimidation and coercion . . . by sexually harassing and verbally abusing the plaintiff as aforesaid").

[4]See, e.g., G. L. c. 151B, § 1 (18)(1990 ed.)(sexual harassment is verbal or physical conduct of sexual nature when conduct has "*purpose or effect* of unreasonably interfering with an individual's work performance" [emphasis supplied]).

in nature; the language within the complaint is clear and unambiguous. For example, at paragraph 49, Olson alleges that *all* of the "actions of the defendants . . . set forth herein constituted unprivileged, intentional, extreme and outrageous" conduct.[5] Nowhere is the word "negligent" expressly mentioned or reasonably implied by the language of the complaint. Thus, regardless of the statutory language of G. L. cc. 151A, 151B, and 151C, and of the language of paragraphs 18 and 22 to which Timpson refers in a vacuum, Olson specifically averred "intentional" conduct, conduct not covered by the policy.[6] See *Terrio*, 16 Mass. App. Ct. at 168. In order for the intentional acts exclusion to apply, the insured need *not specifically* intend or anticipate the full extent of the injury which ultimately results; rather the exclusion can apply where the insured should have known that *some harm* was likely to occur as a result of a clearly intentional act. See *Newton* v. *Krasnigor*, 404 Mass. 682 (1989) (insurance company not responsible for coverage on basis of intentional acts exclusion for property damage arising out of a fire set by minor insured where the minor did not specifically intend to cause substantial damage, but did intend to set a fire). But see *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81, 84 (1984)(an intentional act of an insured can still be covered if the insured does not specifically intend to cause harm or is not substantially certain that such harm will occur). While Timpson argues that he did not mean to hurt Olson severely, he should, of course, have been aware that laughing and shouting encouragement to his lewd and vulgar teammates would harm Olson in *some* way.

Where the language within Olson's complaint describes

---

[5]Not only does the complaint repeatedly use phrases like that at paragraph 49, *supra*, that imbue intentional conduct to the entire complaint, but also each count of the complaint "incorporate[s] herein by reference" some preceding paragraphs outlining intentionality. Upon reading the complaint in parts and as a whole, it appears that the inclusion of such language repeatedly emphasizes that Olson was alleging "intentional" conduct.

[6]Transamerica also contends that as a matter of law, Olson would not be able to seek to recover in negligence from Timpson for the same acts which were the basis of the intentional conduct counts. See *Worcester Ins. Co.* v. *Fells Acres Day School, Inc.*, 408 Mass. 393, 410 (concluding that if conduct is negligent it cannot also be intentional); *Waters* v. *Blackshear*, 412 Mass. 589, 590 (1992)(same); *Doe* v. *Liberty Mutual Insurance Co.*, 423 Mass. 366, 370 (1996) (same).

with "precision intentional conduct . . . which the insurance policy expressly excludes from coverage," see *Terrio*, 16 Mass. App. Ct. at 168, and where it is not necessary that Timpson have specifically intended or anticipated the full extent of the injury which resulted from his actions, Timpson's alleged behavior was, in fact, intentional, and not negligent.

*c. Conclusion.* In sum, we conclude that where Olson alleged that Timpson acted outside the scope of employment and acted intentionally, there is no possible way to envisage a loss that "fits the expectation of protective insurance reasonably generated by the policy." See *Sterilite Corp.*, 17 Mass. App. Ct. at 318. Accordingly, the motion judge properly granted summary judgment in Transamerica's favor on count I of Timpson's complaint.

2. *Statutory claims.* Timpson also appeals from the entry of summary judgment in favor of Transamerica on his claims under G. L. c. 93A and c. 176D. Liability under count II of Timpson's complaint, a violation of G. L. c. 93A, the Massachusetts consumer protection law, is based upon the employment of unfair and deceptive acts and practices. *Boston Symphony Orchestra, Inc.*, 406 Mass. at 14. *Doe* v. *Liberty Mutual Insurance Co.*, 423 Mass. at 371. Timpson argues that Transamerica's actions in denying a defense to Timpson constitute "unfair claims in settlement practices" under both G. L. c. 93A and c. 176D, § 3(*a*). However, where Timpson allegedly acted intentionally, outside the scope of his employment, he was not an "insured" under the policy, and, therefore, Transamerica rightfully declined to defend him. See *Terrio*, 17 Mass. App. Ct. at 168.[7]

*Judgments affirmed.*

---

[7] Even if Transamerica had relied on an ultimately incorrect, though plausible, interpretation of their policy when refusing to defend Timpson, they would not be found liable under G. L. c. 93A. See *Gulezian* v. *Lincoln Ins. Co.*, 399 Mass. 606, 613 (1987); *Boston Symphony Orchestra, Inc.*, 406 Mass. at 14-15; *Lumbermens Mut. Cas. Co.* v. *Offices Unlimited, Inc.*, 419 Mass. 462, 468 (1995).