Lopez, J.
This action arises out of an altercation between plaintiff Joseph Z. Shank and the defendant and town employee Paul Hallisey (“Hallisey”) after a meeting of the Townsend Board of Health (“the Board”) in the defendant Town of Townsend’s (“Townsend”) Police Communications Center. Shank filed suit against Hallisey alleging assault, battery and intentional infliction of emotional distress, and alleging negligence against Townsend. Hallisey thereafter im-pleaded Townsend’s insurer Great American Insurance Co. (“Great American”) seeking a declaration that Great American had a duty to defend him. Townsend filed a motion for summary judgment pursuant to Mass.R.Civ.P. 56 asserting immunity under G.L.c. 258, §10(b). Hallisey and Great American have cross-motioned for summary judgment on Great American’s duty to defend.
BACKGROUND
After a hearing and review of the motions and attendant submissions, the summary judgment record indicates the following undisputed facts.
Linda Tarantino, in her official capacity as chairperson of the Board arranged for a meeting to be held on March 30, 1998, to address complaints about the *524 bidding and procurement procedures for the Townsend Landfill. The meeting was held m the Townsend Police Communications Center in a room accessible through a small anteroom. Hallisey, the foreman for the town landfill was present at the request of the Board at the meeting to answer questions about the procedures. Also attending the meeting was Shank, who had raised the procurement and bidding issues prior to, and was the apparent impetus of, the meeting. During the meeting, Shank again raised the issue of impropriety in the bidding and procurement procedures but offered no factual support for his allegations. Hallisey requested that the meeting go into executive session to prevent the airing of the allegations against him in an open public forum. The board refused. Shortly thereafter Shank attempted to speak but was told that if he tried to speak again he would be removed from the meeting. Shank accused the board of corruption and left the room but remained in the anteroom for the rest of the meeting.
After additional heated discussion between Hallisey and the Board, Hallisey became frustrated and angry and stormed from the room stating that the Board could expect his resignation in the morning. In the process, Hallisey encountered Shank in the anteroom. Some shouting ensued and Hallisey hit or forcefully shoved Shank with his forearm throwing him across the small room and against the wall. Shank got up and jumped on Hallisey from behind and the two of them tumbled to the floor in a scuffle. Other meeting attendees broke up the fight. Hallisey left the building and Shank remained for another approximately twenty minutes at which time an ambulance was called by the police and he was taken for treatment of his injuries. Shank’s injuries included neck, shoulder, back and some unspecified head injury, as well as general bruising.
Hallisey is six foot four inches tall and weighs approximately 365 pounds; Shank is five foot ten inches and weighs approximately 175 pounds.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. at 17.
A. Townsend is Immune from Suit Under G.L.c. 158, §10(b)
General Laws chapter 258, §10(b) provides immunity to the Commonwealth for “any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused.”[2] G.L.c. 258, § 10(b) (1988 & Supp. 2000). The performance of almost any function involves some exercise of discretion but not all functions qualify for § 10(b) immunity. See Harry Stoller & Co., Inc. v. City of Lowell, 412 Mass. 139, 142 (1992) citing Whitney v. Worcester, 373 Mass. 208, 216-20 (1977). The “discretionary function” of this provision involves conduct requiring a high degree of judgment in planning and policymaking and must entail more than the carrying out of a previously established policy or plan for which established standards of tort liability apply. Id. That is not to say that only the highest officials’ acts sustain tort immunity; the discretionary function exception has been held to apply to acts of the “the dean, the school nurse, and a gym teacher,” Cady v. Plymouth-Carver Regional School District, 17 Mass.App.Ct. 211, 212 (1983), and playground “program supervisors.” Wightman v. Town of Methuen, 26 Mass.App.Ct. 279, 280 (1988).
Accordingly, it is the nature of the act that is relevant to the discretionary function immunity and not the managerial level at which it is made. Harry Stoller, 412 Mass. at 143.
The process for assessing whether the conduct falls within the parameters of § 10(b) involves making two determinations: first whether the actor’s conduct involves discretion, and second, whether the discretion is of the kind that involves policymaking. Whitney, 373 Mass. at 217. The following inquiries are relevant to assessing whether an act of a public employee involved discretionary conduct protected by § 10(b): “Was the injury-producing conduct an integral part of governmental policymaking or planning? Might the imposition of tort liability jeopardize the quality and efficiency of the governmental process? Could a judge or jury review the conduct in question without usurping the power and responsibility of the legislative or executive branches? Is there an alternate remedy available to the injured individual other than an action for damages?” Id. at 219.
The alleged injury-producing conduct on the part of Townsend was the failure to provide adequate safety at the March 30 th meeting in the form of police presence. Tarantino, in her official capacity as chairperson of the Board planned the meeting including determining its location, topic, time, and other issues including security. These decisions, right or wrong, were within the discretion of her office and not prescribed by statute, regulation or agency practice. This court need not inquire of what she knew or should have known *525 of Hallisey’s behavior at past meetings as her planning decisions, including whether to provide security, were discretionary. See Gage v. City of Westfield, 26 Mass.App.Ct. 681, 685-86, 696 (1988). “It is the nature of the governmental act, not the care with which it is performed, that determines whether the exception applies.” Cady, 17 Mass App. Ct. at 215 (citations omitted). Thus, the Town of Townsend is immune from suit and its motion for summary judgment is allowed.
B. Cross Motions for Summary Judgment on Great American’s Duty to Defend
Great American is the insurer for Townsend, Hallisey’s employer. Great American moves for summary judgment claiming there is no duty to defend Hallisey against Shank’s allegations of intentional tortious conduct because Hallisey was not acting within the scope of his employment and because intentional acts are excluded from the policy coverage. Hallisey counters that Great American’s duty to defend arises because he was attending the meeting in his official capacity as foreman of the landfill and because his tortious act was self defense against Shank’s wrongful imprisonment.
Great American’s duty to defend turns first on whether or not the allegations in the complaint are reasonably susceptible of an interpretation that brings them under the policy’s coverage. See Sterlite Corp. v. Continental Cas. Co., 17 Mass.App.Ct. 316, 318 (1983). While the insurer’s duty to defend may arise based on the types of losses which may lay within the reasonable interpretation of the allegations, Sterilite Corp., 17 Mass.App.Ct. at 318, when the allegations “ ‘lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate’ or defend the claimant.” Terrio v. McDonough, 16 Mass.App.Ct. 163, 168 (1983). See also Timpson v. Transamerica Ins. Co., 41 Mass.App.Ct. 344, 352-53 (1996). The allegations in the complaint specifically and unequivocally allege the intentional torts of assault and battery and intentional infliction of emotional distress by Hallisey on Shank.
The only relevant inquiry becomes whether the allegations fall within the policy coverage. The burden lay with Hallisey to prove that he is an insured as defined under the Great American insurance policy. See Gordon v. Safety Ins. Co., 417 Mass. 687, 689 (1994). The first and controlling inquiry in this case is whether Hallisey was acting within the scope of his employment when the alleged acts occurred therefor bringing him under the definition of an insured under §n(2)(a) of the Commercial General Liability Coverage Form of the policy. The factors considered in deter mining if an employee was acting within the scope of his employment are whether (1) the conduct is of the kind he is employed to perform; (2) it occurs substantially within authorized time and space limits; and (3) it is motivated, at least in part, by a purpose to serve the employer. Timpson v. Transamerica Ins. Co., 41 Mass.App. 344, 348 (1996), citing Wang Labs, Inc. v. Business Incentives, Inc., 398 Mass. 854, 858 (1986), and cases cited therein.
Addressing the third factor first, Hallisey cannot and does not say that the allegations of assault and battery, if proven, were motivated by a purpose to serve Townsend. No desire, purpose or intention of Townsend or the Board could be, nor is alleged to be, advanced by Hallisey intentionally harming a resident of Townsend. Further, Hallisey was not employed to assault townspeople even if he had a disagreement with them. Hallisey argues that his conduct was in response to Shank’s interference with his ability to perform his duties, to wit, explain to the Board the procedures which he used as supervisor of the landfill. This might be more plausible if the altercation occurred inside the meeting room while Hallisey was attempting to speak, but that is not the case. See Worcester Ins. Co. v. Fells Acres Day School, Inc., 408 Mass. 393, 404-05 (1990) (employee’s assault must result from plaintiffs conduct which presently interferes with the employee’s ability to perform his duties). The assault occurred twenty minutes or more after Shank had left the meeting and Hallisey had exited the meeting room and after declaring his intent to resign. Additionally, Hallisey argues that his actions were in self defense because Shank attempted to prevent him from leaving.[3] If he wished to explain his procedures to the Board more fully, leaving was surely not a means to that end. Even if it is conceded that Hallisey was acting within the authorized time and space limits of his employment, the balance of the above considerations undermine his claim of acting within the scope of his employment.
The issues of the insurance policy’s intentional act exclusion and the preclusive effect of the arbitrator’s award on the question of self defense need not be reached as Hallisey was not acting within the scope of his employment at the time of the altercation and accordingly Great American has no duly to defend him.
ORDER
For the foregoing reasons the court orders that defendant Town of Townsend’s motion for summary judgment is ALLOWED; third-party defendant Great American Insurance Company’s motion for summary judgment is ALLOWED; and third-party plaintiff Paul E. Hallisey’s cross motion for summary judgment is DENIED.

Chapter 258, the Massachusetts Tort Claims Act, provides relief for private individuals in tort actions against public employers. G.L.c. 258, §10 provides various exceptions to that liability.

Hallisey argues that Great American’s duty to defend arises out of his affirmative defense of self defense under the exception of intentional acts. As discussed, the allegations and their reasonable interpretation based on known or easily determined facts determine an insurer’s duty to defend. See Timpson, 41 Mass.App.Ct. at 347. Thus only allegations as opposed to affirmative defenses are relevant to an insurer’s duty to defend. See Terrio, 16 Mass.App.Ct. at 168.