**MIB GROUP, INC., James F. Cook, Lee B. Oliphant and James S. Corbett, Plaintiffs,**

v.

**FEDERAL INSURANCE COMPANY, Defendant.**

**Civil Action No. 06–10662–NMG.**

United States District Court, D. Massachusetts.

Oct. 25, 2006.

Donald R. Pinto, Jr., Robert B. Foster, Rackemann, Sawyer & Brewster, Boston, MA, for Plaintiffs.

Jacqueline R. Dungee, Phillip E. Wilson, Jr., Ronald P. Schiller, DLA Piper Rudnick Gray Cary U.S. LLP, Philadelphia, PA, John A.D. Gilmore, DLA Piper Rudnick Gray Cary U.S. LLP, Boston, MA, for Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

This case involves an insurance coverage dispute. Defendant Federal Insurance Company ("Federal") issued a not-for-profit organization policy (the "Policy") that provided insurance coverage for Plaintiffs MIB Group, Inc. ("MIB Group"), a not-for-profit organization, and its employees James F. Cook, Lee B. Oliphant and James S. Corbett (collectively, "Insured Persons"). The Policy extended from July 1, 2002 to July 1, 2003.

During the policy period, a civil suit was filed against MIB Group and the Insured Persons. Federal refused their request to provide a defense and Plaintiffs brought suit seeking a declaratory judgment that Federal wrongfully breached its duty to defend and is obligated under the Policy to indemnify the Plaintiffs. Defendants removed the case from state court on the basis of diversity jurisdiction and have filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted.

## I. *Background*

In December 2002, e-Financial Ventures I, L.P. and e-Financial Ventures I, Unit Trust (collectively, "e-FV") filed a civil suit ("the Underlying Action") against the Insured Persons, MIB Group and two of its for-profit subsidiaries, MIB Inc. and e-Services Corporation. The complaint in the Underlying Action alleged that 1) MIB Group, MIB Inc. and e-Services formed a for-profit subsidiary, e-Nable Corporation ("e-Nable"), in which the Insured Persons were officers and 2) e-FV was induced to invest in e-Nable by a series of misrepresentations by those entities and the Insured Persons.

The original complaint in the Underlying Action had six counts: breach of fiduciary duties, minority shareholder oppression, common law fraud, negligent misrepresentation and violations of the Texas and Massachusetts securities laws. e-FV subsequently filed an amended complaint that added e-Nable as a defendant and expanded the allegations in the original complaint. The amended complaint had 13 separate counts, six of which were dismissed early in the proceedings. In addition to the six original counts, the new counts alleged breach of fiduciary duties under New York Business Corporation Law and a claim for attorneys' fees.

## II. *Motion to Dismiss*

### A. *Standard of Review*

A court may not dismiss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) "unless it appears, beyond doubt that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." *Epstein v. C.R. Bard, Inc.,* 460 F.3d 183, 187 (1st Cir.2006)(quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. *Nollet v. Justices of the Trial Court of Com. Mass.,* 83 F.Supp.2d 204, 208 (D.Mass.2000) *aff'd,* 248 F.3d 1127 (1st Cir.2000). Furthermore, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.,* 199 F.3d 68, 69 (1st Cir.2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. *See Nollet,* 83 F.Supp.2d at 208.

### B. *Analysis*

 The parties agree that Massachusetts law applies. Under Massachusetts law, an insurer's duty to defend an insured against a claim is construed generously. If the allegations of the complaint are "reasonably susceptible of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense." *Fed. Ins. Co. v. Raytheon Co.,* 426 F.3d 491, 496 (1st Cir.2005) (citation omitted). The duty extends even in cases where the allegations of the complaint are baseless. *Mt. Airy Ins. Co. v. Greenbaum,* 127 F.3d 15, 19 (1st Cir.1997). There are, however, limits. In cases where the allegations of the complaint "lie expressly outside the policy coverage ... the insurer is relieved of the duty to investigate or defend the claimant." *Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.,* 439 Mass. 387, 788 N.E.2d 522, 531 (2003)(quoting *Timpson v. Transamerica Ins. Co.,* 41 Mass.App.Ct. 344, 669 N.E.2d 1092, 1095 (1996)).

 Insurance policies are construed under the general rules of contract interpretation. *Brazas Sporting Arms v. Am.*

*Empire Surplus Lines Ins. Co.*, 220 F.3d 1, 4 (1st Cir.2000) (citations omitted). Thus, interpretation begins with the actual language of the policies, given its plain and ordinary meaning. *Id.* While doubts regarding ambiguous policy provisions are to be resolved against the insurance company, no such strict construction should apply where the policy is "plain and free from ambiguity." *Raytheon*, 426 F.3d at 497 (quoting *Barnstable County Mut. Fire Ins. Co. v. Lally*, 374 Mass. 602, 373 N.E.2d 966, 968 (1978)). With regard to exclusion provisions specifically, such clauses must be "strictly construed against the insurer so as not to defeat any intended coverage or diminish the protection purchased by the insured." *City Fuel Corp. v. Nat'l Fire Ins. Co.*, 446 Mass. 638, 846 N.E.2d 775, 777 (2006)(citing *Vappi & Co. v. Aetna Cas. & Sur. Co.*, 348 Mass. 427, 204 N.E.2d 273 (1965)).

### 1. *The Securities Exclusion (Endorsement No. 7(5))*

In its motion to dismiss, Federal contends that it has no duty to defend or indemnify Plaintiffs' claims in the Underlying Action on the basis of language found within the Policy's Endorsement Number Seven ("Special Endorsement"), which reads:

> The Company [Federal] shall not be liable for Loss on account of any Claim where all or part of such Claim, directly or indirectly, is based upon, arises from or is in consequence of any actual or alleged violation of:
>
> (a) the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940 or any similar federal securities law, or any law, rule or regulation promulgated thereunder, or any amendment of such laws, rules or regulations;

> (b) any state, provincial or local securities or "Blue Sky" laws, or any law, rule or regulation promulgated thereunder, or any amendment of such laws, rules or regulations; or
>
> (c) any provision of the common law imposing liability in connection with the offer, sale or purchase of securities

("the Securities Exclusion"). Because part, or perhaps all, of the claims at issue here involves alleged violations of state securities laws and common laws that impose liability in connection with the offer, sale, or purchase of securities, the allegations in the Underlying Action are beyond the terms of coverage.

In response, the Plaintiffs contend that the Securities Exclusion does not apply to the entire Policy, but rather is limited to the parties at issue in the Special Endorsement where the exclusion is found. The Special Endorsement provides additional insurance coverage to the officers and directors of MIB Group's for-profit subsidiaries. Sections One through Four of the Special Endorsement amend the definitions in the Policy to extend coverage to those officers and directors and Section Five, the Securities Exclusion, precludes coverage for claims alleging securities violations. Given that the Securities Exclusion is found within the Special Endorsement, Plaintiffs contend that it limits only the additional coverage provided to the officers and directors of the for-profit entity. Under the Plaintiffs' theory, the Insured Persons are without coverage in their capacities as officers and directors of e-Nable, but are covered as MIB Group employees. Moreover, because MIB Group itself is explicitly excluded from the definition of a For–Profit Entity under Section One of the Special Endorsement, the Plaintiffs contend that all claims

against MIB Group are similarly not barred by the Securities Exclusion.

Thus, the crux of the dispute regarding the pending motion to dismiss is whether the Securities Exclusion applies only to the provisions of the Special Endorsement or to the entire Policy. If it applies to the entire policy, as defendant Federal argues, coverage for Plaintiffs is limited by the Securities Exclusion's terms in all claims involving securities law regardless of whether the member or organization was affiliated with the not-for-profit organization, MIB Group, or one of its for-profit subsidiaries.

The perfunctory composition of the Securities Exclusion leaves no clear instruction as to how the exclusion is to be applied. Nonetheless, the plain meaning of the terms of the exclusion favors defendant Federal's position. First, there is nothing in the language that limits the Securities Exclusion to the provisions of the Special Endorsement itself. That absence appears to be purposeful when compared to other sections of the Special Endorsement which explicitly state that the terms are to be applied "[s]olely with respect to the coverage afforded pursuant to this endorsement".

Second, while the Securities Exclusion lacks any explicit language specifying that it applies to the entire Policy, Federal makes a convincing argument that such a reference was not necessary in this case. Unlike Endorsements Number Two or Six which contain specific language linking the endorsement's terms to the Policy as a whole, the Securities Exclusion is silent in that regard. Federal correctly notes that, contrary to those endorsements, the Securities Exclusion introduces no overlapping coverage, i.e. there are no other references to securities claims anywhere in the Policy and therefore the Securities Exclusion stands alone without directly contradicting or changing any other provision.

Finally, there is a logical rebuttal to Plaintiffs' contention that it is unreasonable to expect that an endorsement which adds coverage to a policy would simultaneously limit the coverage provided by it. The Policy is designed for not-for-profit organizations. Federal and Plaintiffs agreed to expand that coverage to include for-profit subsidiaries of MIB Group. In agreeing to provide additional insurance coverage to for-profit entities, Federal increased its risk of incurring liability resulting from potential securities violations. It is readily understandable that Federal would want to limit its liability on behalf of not only the for-profit subsidiary's officers and directors, but also the not-for-profit parent company and its officers and directors who may become liable as a result of the subsidiary's securities violations.

Thus, while exclusion provisions are generally construed strictly against the insurer, the plain and ordinary terms of the subject provision support the reasonable construction that the Securities Exclusion applies.

### 2. Counts from the Underlying Action

The remaining issue is whether Federal is still required to defend and indemnify Plaintiffs on some, if not all, of the counts emanating from the original and amended complaints in the Underlying Action.

Considering once more the language of the Securities Exclusion, Federal contends that all of the counts at issue are excluded from coverage on the basis of a plain meaning interpretation. The Securities Exclusion limits liability for "any Claim where *all or part of such Claim*, directly or indirectly, is based upon, arises from or is in consequence of an actual or alleged violation" (emphasis added) of securities

laws or common law liability in connection with securities. "Claim", as defined in the main body of the Policy includes a "civil proceeding commenced by the service of a complaint or similar pleading ... against an Insured for a Wrongful Act". Federal asserts that inasmuch as all of the counts arise from the same complaint (or amended complaint), and it is undisputed that at least one of the counts involves a violation of state securities law, there is no coverage for the Underlying Action.

Plaintiffs attempt to splice the complaints and contend that only those counts which stem from the factual allegations regarding misrepresentations that induced e-FV to invest in e-Nable are excluded by the Securities Exclusion. The other counts for breach of fiduciary duty and minority shareholder oppression, they say, are based on actions taken after the alleged misrepresentations and therefore arise from a different set of factual allegations. Plaintiffs' argument demands a restrictive reading of the terms "based on" and "arise from" that would limit the specific factual allegations to specific counts.

As an initial matter, Plaintiffs fail to reconcile the plain language of the Securities Exclusion, which limits liability where even *"part* of such Claim" is based upon, arises from or is in consequence of an alleged securities violation, with their main argument. In their memorandum, Plaintiffs concede that the language of the Securities Exclusion is expansive and that "claim" is defined as a civil proceeding such as the Underlying Action, but then attempt to equate the term with "count" and thus posit that each count should be analyzed in a vacuum. Plaintiffs provide no support for their argument other than the proposition that insurance exclusions are to be interpreted narrowly. It seems clear that, to the contrary, the definition of "claim" in the policy supports the defen-

dant's broad reading that the term, in this case, refers to the complaint in its entirety. *See also Raytheon,* 426 F.3d at 497 (finding that "a claim for present purposes is equivalent to a complaint" in a case involving a nearly identical definition of claim).

Moreover, even an analysis of the individual counts at issue in the Underlying Action demonstrates that they are based upon, arise from or are in consequence of an alleged securities violation. All of the counts, including breach of fiduciary duty and minority shareholder oppression, are necessarily related to or originate from the alleged misrepresentations and broken promises made to the principals of e-FV to induce them to invest in e-Nable. While a complaint involving issues more distinct from the alleged securities fraud would be cause for more scrutiny, such is not the case here.

### ORDER

Based on the foregoing memorandum, defendant's motion to dismiss (Docket No. 5) is **ALLOWED.**

**So ordered.**