# United States Court of Appeals
## For the First Circuit

No. 18-1639

UNITED STATES OF AMERICA,

Appellee,

v.

TEM TOM,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Howard, Chief Judge,
Kayatta and Barron, Circuit Judges.

Chauncey B. Wood and Wood & Nathanson, LLP on brief for appellant.
Benjamin M. Block, Assistant United States Attorney, and Halsey B. Frank, United States Attorney, on brief for appellee.

February 17, 2021

**HOWARD, Chief Judge.** Tem Tom appeals from his conviction for possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). His sole claim is that the district court committed reversible error in denying Tom's motion to suppress evidence of drugs and cash that were recovered from him and the other occupant of the car after an investigatory motor vehicle stop. As in the district court, whether the evidence should have been suppressed comes down to whether reasonable suspicion existed at the time officers approached the vehicle in which Tom was a passenger and directed its occupants to exit. Finding no basis to disturb the district court's conclusion that the officers had reasonable suspicion, we affirm.

## I. FACTS

When considering the denial of a motion to suppress, "[w]e recite the facts as found by the district court, consistent with record support[,]" including the testimony from the motion hearing. United States v. Soares, 521 F.3d 117, 118 (1st Cir. 2008). In late 2016, the federal Drug Enforcement Agency was investigating suspected drug dealing by Denis Ochan. As part of the investigation, a confidential informant conducted controlled purchases of crack cocaine from Ochan on three separate occasions in late 2016 and early 2017. After that, the Drug Enforcement Agency (DEA) coordinated a final "buy/bust operation"

- 2 -

against Ochan; as the term suggests, the agents intended to arrest Ochan upon making a final purchase from him.

The planned takedown took place on February 2, 2017, at a shopping center located across the street from Ochan's residence in Portland, Maine. The confidential informant waited in a vehicle in the shopping center's parking lot, with $500 that agents had provided him to purchase approximately five grams of crack cocaine from Ochan. Given their positioning within the parking lot and the audio equipment that they had positioned on the informant, the agents could see and hear all of the informant's interactions.

Meanwhile, another group of agents maintained surveillance on Ochan's residence, part of a three-family building. Those agents observed two men in a "green Chevy Cruze with a New York license plate" turn into Ochan's driveway and pull around to the back of the building, disappearing from view. Less than two minutes after the Chevy arrived, an agent observed a "male c[ome] around from the back of the apartment building" and enter a door at the rear left corner of the building. Approximately ten minutes later, that same person and Ochan exited the building together through the same door and walked behind the building. The back of the building remained out of the agents' view.

Reemerging, Ochan crossed the street towards the shopping center. Agents watched as Ochan entered the informant's vehicle. After hearing Ochan and the informant's entire

- 3 -

conversation, agents moved in and arrested Ochan. A search of Ochan turned up approximately four grams of crack cocaine and $530 in cash. After initially denying having met with anyone, Ochan told the agents that he had obtained the crack cocaine from the individuals in the green Chevy that had pulled up to his residence.

While these events were taking place at the shopping plaza, the agents surveilling Ochan's residence observed the Chevy drive away from the building less than ten minutes after Ochan left. Some of the agents followed the Chevy as it proceeded toward downtown Portland. When the Chevy stopped approximately two miles later, uniformed Portland Police Department officers were the first to approach it. Tom was the passenger in the vehicle. After asking Tom and the driver to exit the Chevy, the officers found cocaine base on the driver's seat and on both Tom and the driver. They were both placed under arrest.

## II. PROCEDURAL HISTORY

In March 2017, a federal grand jury indicted Tom for knowing and intentional possession of 28 grams or more of cocaine base with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Tom filed a motion to suppress the evidence of drugs and money found as a result of the search, which the district court denied after conducting an evidentiary hearing. Tom subsequently entered a conditional guilty plea, reserving his right to appeal the denial of his

suppression motion. After being sentenced to 84 months of incarceration and eight years of supervised release, Tom timely appealed.

### III. ANALYSIS

#### A. Standard of Review

When considering a district court's denial of a motion to suppress, we review findings of fact for clear error and apply de novo review to the application of law to those facts and to conclusions of law. United States v. Rheault, 561 F.3d 55, 58 (1st Cir. 2009); United States v. Jones, 523 F.3d 31, 36 (1st Cir. 2008). We "will uphold a denial of a motion to suppress if any reasonable view of the evidence supports it." United States v. Holloway, 499 F.3d 114, 117 (1st Cir. 2007) (quoting United States v. Garner, 338 F.3d 78, 80 (1st Cir. 2003)).

#### B. The District Court's Reasoning

Tom argued before the district court that the officers did not have reasonable suspicion to support the traffic stop. He leaned heavily on his view that Ochan's statements implicating the individuals in the Chevy were unreliable.

Unpersuaded, the court issued an oral ruling denying the motion. In its statements on the record, the district court recognized that the stop had to be supported by "a reasonable and articulable suspicion of criminal activity." The district court noted that reasonable suspicion had to be "more than a naked hunch"

yet "does not require either probable cause or evidence of a direct connection linking the suspect to the suspected crime." For all of this, the district court cited United States v. Chhien, 266 F.3d 1 (1st Cir. 2001).

In explaining its reasoning, the district court emphasized that the officers had prior knowledge of Ochan's drug activity, that the Chevy arrived shortly before the drug sale and left only after it, that one of the occupants appeared to have interacted with Ochan, and that the officers recovered drugs from Ochan's person. The district court stressed that "this was not a mere hunch" and that there was an objectively reasonable suspicion to search the Chevy once the officers arrested Ochan and found the drugs on him. Importantly, the district court clarified that reasonable suspicion existed independent of Ochan's statements that he had obtained drugs from the individuals in the Chevy.

## C.   Reasonable Suspicion Existed

Before us, Tom maintains that reasonable suspicion did not exist. According to Tom, Ochan's statements were both essential to any finding of reasonable suspicion and were not sufficiently reliable under United States v. Jones, 700 F.3d 615, 622 (1st Cir. 2012), and related cases. Tom's argument fails at its first step. Reasonable suspicion existed without Ochan's statements.

The moment upon which we focus our attention is when the officers approached the stopped Chevy and directed its occupants to step out of the car. "Such stops are reasonable, and consequently do not offend the Fourth Amendment, only where officers have a reasonable suspicion supported by articulable facts that criminal activity may be afoot." United States v. Tiru-Plaza, 766 F.3d 111, 115 (1st Cir. 2014) (internal citations and quotations omitted). In determining whether reasonable suspicion existed, courts ask whether the totality of the circumstances provided the officers with more than an "unparticularized suspicion or hunch" that the individual was involved in specific criminal activity. Id. at 116 (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989) (internal quotation marks omitted).

In conducting our review of the facts, we accept the reasonable inferences drawn by the district court and by the law enforcement officers on the scene. See Ornelas v. United States, 517 U.S. 690, 699 (1996). On this record, a reasonable view of the evidence supports the district court's conclusion that the officers had reasonable suspicion that the car's occupants were involved in the drug transaction that law enforcement had arranged and agents had just observed.

Based on the previous controlled drug sales in which agents had seen Ochan participate -- including the sale that day -- agents had specific knowledge that Ochan sold drugs. From

there, the sequence of events on the day of Tom's arrest -- and the reasonable inferences generated by that sequence of events -- is central in the reasonable suspicion calculation. On that day, the Chevy, with its New York license plate, drove to the back of Ochan's residence just before the scheduled buy/bust. Shortly after, a male appeared from behind the building -- where the Chevy had just gone -- and entered the building. The man was then seen eight to ten minutes later going behind the building with Ochan. Next, Ochan reappeared and went directly across the street to meet with the informant and conduct the drug sale. All of these observations contributed to the development of a reasonable suspicion that there was a meaningful, articulable link between the occupants of the Chevy and Ochan's illegal activities.

When the agents arrested and searched Ochan, the drugs and cash recovered on him added to the evidence indicating that he was actively engaging in drug sales. That recovery also added to the suspicion that the individual from the Chevy with whom Ochan had just been seen might be involved in the drug activity. Still more, the Chevy did not leave Ochan's building until minutes after Ochan's arrest, solidifying the reasonability of the officers' suspicion that its occupants were implicated in the drug activity. Since we agree with the district court that reasonable suspicion existed before the officers elicited the incriminating statements from Ochan, we do not need to address whether he was reliable.

See United States v. Mayendía-Blanco, 905 F.3d 26, 37 (1st Cir. 2018) (recognizing that "[t]he simplest way to decide a case is often the best" (alteration in original) (quoting Stor/Gard, Inc. v. Strathmore Ins. Co., 717 F.3d 242, 248 (1st Cir. 2013))).

Tom argues in response that the officers could not have been certain that the person who entered Ochan's building was one of the individuals from the Chevy or that the person who entered the building went to Ochan's apartment. He also points out that Ochan and this person were not seen speaking to each other as they left the building. But it is well established that reasonable suspicion does not preclude the existence of some confounding facts. See New Jersey v. T.L.O., 469 U.S. 325, 346 (1985) (recognizing that "the requirement of reasonable suspicion is not a requirement of absolute certainty: 'sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment'" (quoting Hill v. California, 401 U.S. 797, 804 (1971))).

Tom makes one additional argument. In his view, the officers who searched him could not have had reasonable suspicion because they approached him only after Ochan's interrogation. But law enforcement officers are not required to act as soon as they develop reasonable suspicion. A rule to the contrary would disincentivize diligence. See United States v. Silva, 742 F.3d 1,

- 9 -

8 (1st Cir. 2014). And we do not consider an officer's subjective intent when evaluating objective reasonableness. See Whren v. United States, 517 U.S. 806, 814 (1996) ("[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent."). In sum, we will not penalize agents for continuing to investigate after establishing reasonable suspicion.

The district court's decision to reject Tom's motion to suppress was sound. The officers had reasonable suspicion that the occupants of the Chevy were involved in illegal drug activity, and the decision to approach the car and search Tom was therefore objectively reasonable under the Fourth Amendment.

## IV. CONCLUSION

For the foregoing reasons, we **affirm** the conviction.